IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 8:05CR381 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | MEMORANDUM |
| | ) | AND ORDER |
| RICHARD D. MARASCO and | ) | |
| ANGELA D. HARMS, | ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the Court on the Report and Recommendation (Filing No. 44) issued by Magistrate Judge Thomas D. Thalken recommending: the motion to suppress filed by the Defendant, Richard D. Marasco, (Filing No. 24), be denied; and the motion to suppress filed by the Defendant, Angela D. Harms, (Filing No. 26), be granted in part and denied in part.  The government, Marasco, and Harms each filed a statement of objections to the Report and Recommendation and supporting briefs (Filing Nos. 53 and 54, government; Filing Nos. 49 and 50, Marasco; Filing Nos. 46 and 47, Harms) as allowed by 28 U.S.C. § 636(b)(1)(C) and NECrimR 57.3(a).

The Indictment charges: Marasco and Harms with conspiracy to manufacture 50 grams or more of a mixture or substance containing methamphetamine (Count I); Marasco and Harms with manufacturing 5 grams or more of methamphetamine (Count II); and Marasco and Harms with possessing equipment, chemicals, product and material to manufacture a controlled substance (Count III).  Marasco seeks an order suppressing evidence seized during: a March 27, 2005, search of a pick-up truck he was driving in Plattsmouth, Nebraska; a May 20, 2005, search of a residence at 720 1st Ave., Plattsmouth, Nebraska; and an August 24, 2005, search of a motel room at the Offutt Motor Court in

Bellevue, Nebraska.  (Filing No. 24.)  Harms seeks an order suppressing: evidence seized during the August 24, 2005, motel room search; and statements made as a result of the motel room search.  (Filing No. 26.)

Following two evidentiary hearings,[1] Judge Thalken issued a Report and Recommendation in which he concluded: Marasco met his burden of showing that he had standing on the evening of March 27, 2005, to contest the search of the pick-up; the March 27, 2005, encounter in the alley with Marasco was consensual and not an investigatory stop or seizure; the observation of materials in the bed of the pick-up together with the strong smell of anhydrous ammonia provided probable cause for the search of the trash bag and the seizure of materials in the pick-up bed; alternatively, in light of the anhydrous ammonia odor, exigent circumstances existed for the search of the pick-up bed; the trash pull at 720 1st Ave., Plattsmouth, Nebraska, supplied probable cause for issuance of the search warrant for the residence; alternatively, assuming that the search warrant affidavit was not based on sufficient probable cause, the *Leon* good faith rule applied, and none of the four exceptions to the good faith rule applied; items seen in plain view while officers were in the motel room arresting Marasco are admissible against both Marasco and Harms; items seized from Marasco's pockets during the search incident to his arrest are admissible; Marasco voluntarily consented to the search of the motel room; Harms objected to officers searching "her stuff," and therefore specific items are not admissible against her;

---

[1]The initial hearing was held prior to the Supreme Court's March 22, 2006, decision in *Georgia v. Randolph,* 126 S. Ct. 1515 (2006).  (Filing No. 37.)  Because the *Randolph* decision encompassed similar issues to those presented in this case, Judge Thalken scheduled a supplementary hearing allowing the parties the opportunity to present additional evidence and argument.  (Filing No. 43.)

and Harms's statements made to law enforcement after the search of the motel room were fruits of the illegal search and are therefore excluded.

On the basis of these determinations, Judge Thalken recommended that Marasco's motion to suppress be denied and that Harms's motion be granted as to the following: 1) items W-3, W-4, W-9, W-18, and W-21 seized from Room 12 of the Offutt Motor Court on August 24, 2005; and 2) her August 25, 2005, statement made to Detective Simones. Otherwise, Judge Thalken recommended that Harms's motion be denied.

## STANDARD OF REVIEW

Pursuant to 28 U.S.C. § 636(b)(1)(C) and NECrimR 57.3(a), the Court shall make a de novo determination of those portions of the report, findings, and recommendations to which the Defendant has objected. The Court may accept, reject, or modify, in whole or in part, the Magistrate Judge's findings or recommendations. The Court may also receive further evidence or remand the matter to the Magistrate Judge with instructions.

## STATEMENT OF FACTS

The Magistrate Judge provided a detailed factual account of the relevant events. The Court has considered the transcripts of the hearings conducted by the Magistrate Judge (Filing Nos. 37, 43). The Court also carefully viewed the evidence (Filing Nos. 35, 40). Based on the Court's de novo review of the evidence and arguments, including the objections to Judge Thalken's factual determinations, the Court adopts Judge Thalken's factual findings in their entirety.

3

## FACTUAL BACKGROUND

Judge Thalken's Report and Recommendation sets out a thorough statement of facts.  Briefly, the facts involve a series of three events.  First, on March 27, 2005, Officer Kennan of the Plattsmouth, Nebraska, police department and a certified methamphetamine lab specialist saw a pick-up truck that he thought was driven by a suspended driver named Saun Mauk.  Kennan found that the driver was not in fact Sean Mauk, but while leaving the pick-up he smelled a very strong odor of anhydrous ammonia coming from the bed of the pick-up.  The pick-up was driven by the Defendant, Richard D. Marasco, with permission from Marasco's roommate who owned of the vehicle.  Another officer arrived.  Two patrol cars blocked the path of the pick-up from the alley in which it was stopped to the street.  Kennan shined his flashlight into the bed of the pick-up, and saw a black trash bag, a Rubbermaid tote container, and a black bucket that held a bag of Morton Rock salt.  Kennan opened the black bag, thinking that the bag was the source of the anhydrous ammonia odor, and inside he found a five-gallon white bucket with a blue liquid.  The liquid had a white sediment, and the odor was stronger.  Kennan believed he had found an active methamphetamine lab, and he seized the items.

On May 19, 2005, Detective Walker of the Plattsmouth police department applied for and was issued a search warrant for the premises at 720 1st Avenue, Plattsmouth, Nebraska, based on  a trash pull that revealed drug and methamphetamine paraphernalia.  Some of the items tested positive for methamphetamine.  The warrant was executed on May 20, 2005, and numerous items were seized.

On August 24, 2005, Sergeant Wood and other officers of the Bellevue, Nebraska, police department were looking for drug activity in areas including the Offutt Motor Court,

4

a Bellevue motel known for drug activity.  Wood saw a 20-county license plate that aroused his suspicions because of the reputation of the motel and because methamphetamine labs recovered from the motel in the past were started by persons from Plattsmouth and the surrounding Cass County area.  A 20-county license plate is from Cass County.  A check was run on the plate, and the vehicle was found to be registered to Marasco, who was determined to be the subject of an outstanding felony warrant.  Officers also learned that Marasco had a drug history.  Officers obtained a past booking photograph of Marasco and conducted surveillance at the motel.  They saw a Toyota 4Runner arrive and observed Marasco and a woman, later identified as codefendant Angela D. Harms, exit the vehicle and enter room 12.  Detective Simones was told by the motel manager that room 12 was rented by Harms.  Officers learned that Marasco had a Toyota 4Runner and Harms had a prior methamphetamine arrest.  The officers knocked on the door of room 12, and Marasco answered.  He was asked to step outside, and instead he stepped back into the room.  He was arrested and handcuffed.   When asked if he had anything dangerous in the room, he responded that he had acid.  Simones asked Harms to step outside, which she did.  Harms said that she rented the room and that Marasco had recently paid for another week.  She stated that both shared the room equally and came and went as they pleased.  When Simones asked Harms for permission to search the room, she answered that she would rather not have officers looking through her "stuff."

While Simones was outside with Harms, Wood searched Marasco's person incident to his arrest.  He found baggies of methamphetamine, advised Marasco of his *Miranda* rights, asked him for permission to search the room and stated that Marasco did not need to consent.  Marasco told Wood that there was a gas generator and acid in the room.

5

Simones went into the room and talked with Marasco. When asked who had a room key, Marasco said that he had the only key and kept it with him at all times. Marasco said that Harms rented the room but he had paid for it. Marasco said that he and Harms shared the room equally, coming and going as they pleased.

Based on Marasco's consent to search, officers searched room 12. Many items of methamphetamine manufacture, actual methamphetamine, and methamphetamine paraphernalia were found. The items are detailed in Judge Thalken's Report and Recommendation. (Filing No. 44, at 7-8.)

Simones went outside and advised Harms of her *Miranda* rights. Harms then made incriminating statements.

## ANALYSIS

Each party has objected to Judge Thalken's Report and Recommendation. The objections are discussed below.

### DEFENDANT MARASCO'S OBJECTIONS

Marasco objects to the following portions of the Report and Recommendation:

1.　　p. 4 - the factual finding that Kennan saw a black bucket containing a bag of Morton rock salt when he shined his flashlight into the bed of the pick-up, because the bucket was in an opaque Rubbermaid tote that had to be opened in order to see the salt;

2.　　pp. 11-12 - the conclusion that the March 27, 2005, encounter between Marasco and Kennan was a consensual encounter and not an investigatory stop, arguing that Marasco was not free to leave;

6

3.     p. 12 - the conclusions that the odor of anhydrous ammonia constituted reasonable suspicion of criminal activity justifying Kennan looking into the bed of the pick-up, and that the smell of the anhydrous ammonia together with the materials in plain view in the bed of the pick-up constituted probable cause of methamphetamine manufacturing justifying the search of the items in the bed.  Marasco argues that the odor of anhydrous ammonia could have emanated from anywhere in the immediate area, and a black trash bag and a Rubbermaid tote are not indicia of methamphetamine manufacturing;

4.     p. 13 - the conclusion that the search of the pick-up was justified based on exigent circumstances due to the volatile nature of methamphetamine labs;

5.     p. 15 - the conclusion that the evidence collected from the trash pull at 720 1st Avenue alone constituted sufficient probable cause to issue a search warrant for the premises, arguing that the evidence recovered from the trash only showed that methamphetamine had been used in the home at some point and not that methamphetamine was then present;

6.     p. 15 - the conclusions that the evidence recovered from 720 1st Avenue is admissible under the *Leon* good faith rule, and none of the exceptions to *Leon* applies.  Marasco argues that the search warrant affidavit is so lacking in probable cause that belief in its existence is entirely unreasonable;

7.     p. 17 - the conclusion that Marasco's consent for the search of the motel room was voluntary, arguing that the consent was the product of police intimidation; and

8.    p. 18 - the conclusion that evidence found in the motel room is admissible

against Marasco even though Harms refused consent to search the room,

arguing that *Georgia v. Randolph*, 126 S. Ct. 1515 (2006), does not apply.

### P. 4 - Finding that Rock Salt Was in Plain View

Marasco objects to Judge Thalken's factual finding that Kennan saw a black bucket

containing a bag of Morton rock salt when he shined his flashlight into the bed of the pick-

up, because the bucket was inside an opaque Rubbermaid tote that had to be opened in

order for him to see the salt.

At the hearing, Kennan testified as follows:

A.    I flashed my light into the bed of the pickup.

Q.    And what did you initially see upon doing that?

A.    I saw a black trash bag which was closed over.  I saw a tote, like a
Rubbermaid container, and it had a black bucket with Morton rock salt, a bag
of Morton rock salt in it.

(Tr. (Filing No. 37), 13:4-8.)

When the Court asked Kennan to describe the Rubbermaid tote, he testified:

A.    It's like a storage tote that you could buy at Walmart.  People store
their clothes in it.  It comes with a plastic lid.  It's just a Rubbermaid
container.

(*Id.*, 25:17-19.)

Kennan described the dimensions of the tote as approximately 1 ½ or 2 feet in

height and width, and he testified that one could not see through it.  (*Id.*, 26:4-12; 27:13-

15.)

Marasco assumes that a lid covered the blue tote and, therefore, Kennan could not

have seen the rock salt without opening the tote.  (Filing No. 50, at 9.)  The Court finds no

8

support for this statement in the evidentiary record. While Kennan described the tote as

a type that is purchased with a lid, the record does not indicate that a lid was on the tote

seen in the bed of the pick-up. Rather, the evidence shows that when Kennan shined his

flashlight in the bed of the pick-up, he saw an opaque blue tote containing a bag of rock

salt. The objection is denied.

### Pages 11-12 - March 27, 2005, Encounter - Consensual Encounter or Stop

Marasco objects to the conclusion that the March 27, 2005, encounter between

Marasco and Kennan was a consensual encounter and not an investigatory stop.[2] Marasco

argues that after he pulled into an alley, Kennan parked his car seven or eight feet away,

and then Hardy arrived and parked so that Marasco could not have driven out of the alley.

Therefore, Marasco reasons that a reasonable person would not have felt free to leave.

The applicable test is whether, under all of the circumstances surrounding the

encounter, a reasonable person would not have felt free to leave. *United States v. Barry,*

394 F.3d 1070, 1075 (8th Cir. 2005). The evidence shows that the alley was a public

residential alley with one entrance and one exit. (Tr. 15:11-22.) Marasco was not pulled

over. Rather, he chose to drive in the alley and park in the alley at the rear of the home in

which he was living. (*Id.* 10:10-17; 15:15-19.) Kennan parked at the entrance to the alley

without activating his lights or siren. (*Id.* 10:21-22.) Hardy arrived and parked his vehicle

partially in the alley and partially in the street, although it is unclear whether he parked

---

[2]In Marasco's brief, he also argues that Kennan lacked reasonable suspicion to
stop the vehicle based on his belief that Sean Mauk was driving the vehicle once
Kennan learned that the vehicle was registered to Jerry Beuchler. (Filing No. 50, at 7.)
The objection is denied, as the knowledge that the vehicle was registered to Beuchler
does not negate the possibility that Sean Mauk was driving the vehicle.

behind Kennan's car or blocking the exit.  In any event, Marasco could not have driven out of the alley.  (*Id.* 6-14.)

All of the circumstances surrounding this encounter include the facts that Marasco parked near his residence and was not pulled over, and he could have walked into his residence.  No lights or sirens were activated.  Under the applicable test a reasonable person would have felt free to leave and walk into the residence.  The objection is denied.

### Page 12 - Odor - Reasonable Suspicion; Odor and Materials - Probable Cause

Marasco objects to the conclusion that the odor of anhydrous ammonia that Kennan smelled as he was leaving and walking past the pick-up constituted reasonable suspicion of ongoing criminal activity justifying Kennan looking into the bed of the pick-up. Specifically, Marasco argues that if the smell was strong enough to sting Kennan's eyes and nostrils, he should have smelled it earlier as he was talking with Marasco.  If true, those facts would support the argument in favor of reasonable suspicion.  Marasco then argues that Kennan previously testified in state court that he did not know origin of the odor, adding that the encounter occurred in an alley where Marasco and Kennan were "undoubtedly" surrounded by "other items" that could have been the source of the odor, such as houses, vehicles, garages or trash cans.  (Filing No. 50, at 8.)  While Marasco correctly pointed out that Kennan could not recall what other items were in the alley, the record contains no evidence of other items, vehicles, garages, or trash cans in the alley.

Kennan testified at the hearing before Judge Thalken that when he previously testified in state court, he meant that he did not know the specific part of the pick-up from which the odor emanated.  His prior state court testimony was that while he was sure it was coming from the back of the truck, the bed of the truck contained items and he was

10

uncertain which item was the source of the smell.  (Tr. 24:20-25:12.)  Reading Kennan's

entire testimony, it is clear that this was his testimony.  In other words, he is experienced

in his knowledge of methamphetamine labs, and he knew that a strong odor of anhydrous

ammonia, used to make methamphetamine, was coming from one of the objects in the bed

of the pick-up.  The objection that the odor did not give rise to reasonable suspicion is

denied.

Marasco also argues that the odor and the materials in the back of the pickup, *i.e.*,

the black trash bag and Rubbermaid container, did not provide probable cause for a search

of the trash bag and the tote.  The applicable test in a situation involving the automobile

exception to the warrant requirement is whether Kennan had probable cause to believe the

vehicle contained contraband before he searched the vehicle, including any containers.

*United States v. Wells,* 347 F.3d 280, 287 (8th Cir. 2003).

Initially, as discussed earlier, the record does not indicate that the tote was covered.

While the testimony lacks specificity, because the tote was opaque and a bag of Morton

rock salt could be seen inside the tote, apparently the tote was uncovered.   Marasco

argues that the encounter was during a Nebraska winter, and it could have been in the

pick-up for Marasco's use while driving.  Although it was near the end of March and no

snow was on the ground that day (Tr. 15:9-10), it is possible that the rock salt was kept to

use on ice. However, given the totality of the circumstances involving the strong anhydrous

ammonia odor, the containers that Kennan had often seen on other occasions used for

storing materials used in methamphetamine manufacturing (Tr. 22:19-14),[3] the probable

_____

[3]Trash bags have been mentioned as one item used in the manufacture of
methamphetamine.  *United States v. Chard,* 115 F.3d 631, 633 (8th Cir. 1997).

11

cause standard was met.  The objection that Kennan lacked probable cause to search the trash bag is denied.

### Page 4 - Exigent Circumstances

Marasco argues that exigent circumstances relating to Kennan's suspicion of a methamphetamine lab did not justify a search of the pick-up.  Under Eighth Circuit law, where officers have probable cause to believe they have found a methamphetamine lab, the volatility of such labs provides an exigent circumstance for justifying a warrantless search.  *Kleinholz v. United States,* 339 F.3d 674, 677 (8th Cir. 2003).  Given  the facts discussed earlier, Kennan had probable cause to believe he had discovered a methamphetamine lab, and therefore exigent circumstances existed for a warrantless search of the pick-up.  The objection is denied.

### Page 15 - Evidence From Trash Pull; Probable Cause for Search Warrant

Marasco objects to the conclusion that the evidence collected from the trash pull at 720 1st Avenue alone constituted sufficient probable cause to issue a search warrant for the premises, arguing that the evidence recovered from the trash only showed that methamphetamine had been used in the home at some point and not that methamphetamine was present at the time of the search.

On May 18, 2005, ten large plastic trash bags and four smaller plastic trash bags were recovered, with the help of a trash company, from 720 1st Ave., Plattsmouth, Nebraska.  The following items were found:

> a Newport lights cigarette box containing 1 corner from a plastic sandwich bag, 2 yellow plastic ziploc baggies, 1 clear plastic ziplock bag; items of venue for Aleta Stalbosky; items of venue for Jerry J. Beuchler; item of venue for Marasco; item of venue for Richard Marasco, 2 pieces of clear rubber tubing; 1 empty 32oz. [sic] can of Acetone; 2 cut white with blue striped

straws; 2 cut white hollow pen tube casings; 5 strips of burnt tin foil; a letter
scale; 1 hollow Bic pen tube with residue.

(Ex. 1, at 2.)

The affidavit states that a field test of the Bic pen tube revealed the presence of
methamphetamine.  (*Id.*)  The affidavit continued, describing the uses of the following in
methamphetamine manufacture: aluminum foil; hollow tubes; Acetone; clear tubing; and
gas generators.  (*Id.* at 3.)  The affidavit reflects that venue items were found to several
individuals known by officers to inhabit the home.  The information was not stale, as the
trash search occurred on May 18, 2005, and the warrant was issued on May 19, 2005.  (Ex.
1.)

Marasco's argument that the evidence from the trash search alone cannot support
a finding of probable cause is rejected.  Applying recent Eighth Circuit law, the evidence
obtained from the trash search, combined with the various venue items found, and the
recency of the search, under the totality of the circumstances is *alone* enough to support
a finding of probable cause to issue the search warrant.  *United States v. Timley,* 443 F.3d
615, 623-24 (8th Cir. 2006) (two trash pulls within a week yielding small and large bags
containing marijuana and residue alone constituted sufficient probable cause for issuance
of a search warrant); *United States v. Briscoe,* 317 F.3d 906, 908-09 (8th Cir. 2003)
(marijuana stems and seeds found in a trash pull alone were a sufficient basis supporting
a finding of probable cause to issue a search warrant).  The objection is denied.

### Evidence Recovered from 720 1st Avenue - Leon Good Faith Rule

Based on the belief that the search warrant affidavit was so lacking in probable
cause, Marasco argues that the good faith rule established in *United States v. Leon,* 468

13

U.S. 897 (1984), does not apply.  Marasco contends that, if the *Leon* good faith rule governs, a recognized exception to the rule applies, *i.e.*, the affidavit was so lacking in probable cause that officers could not reasonably have relied on the affidavit.

The Court disagrees, as Eighth Circuit law clearly states that drug evidence found in a trash search alone is sufficient for a finding of probable cause.  *Timley,* 443 F.3d at 623-24; *Briscoe,* 317 F.3d at 908-09.  It is not necessary to reach the *Leon* analysis. However, assuming that *Leon* must be addressed, the Court agrees with Judge Thalken that the *Leon* good faith rule applies inasmuch as the officers executed the warrant with an objectively reasonable reliance on the issuing judge's determination of probable cause. None of the exceptions to the *Leon* good faith rule applies.

### Voluntariness of Marasco's Consent to Search Motel Room

Marasco objects to the conclusion on page 17 that his consent for the search of the motel room was voluntary, arguing that his consent was the product of police intimidation.

Whether consent to search a residence was voluntarily made must be determined by examining the totality of the circumstances, including " 'both the characteristics of the accused and the details of the interrogation.' " *United States v. Chaidez,* 906 F.2d 377, 380-81 (8th Cir.1990) (quoting *Schneckloth v. Bustamonte,* 412 U.S. 218, 226 (1973)). Voluntary consent is " 'the product of an essentially free and unconstrained choice by its maker,' rather than 'the product of duress or coercion, express or implied.' " *Id.* at 380 (quoting *Schneckloth,* 412 U.S. at 225) (citation omitted).

The Eighth Circuit Court of Appeals has set out certain factors for consideration in determining whether consent was voluntary.  Characteristics of individuals giving consent which should be considered include: 1) age; 2) general intelligence and education; 3)

14

whether the person was intoxicated or under the influence of drugs; 4) whether the person was informed of the right to withhold consent or given *Miranda* rights; and 5) whether, due to previous arrest(s), the person giving consent was aware of the protections afforded to suspected criminals by the legal system. *Id.* at 381.

Characteristics of the environment in which the consent was given include whether the person who consented, at the time of the consent: 1) was detained and questioned for a long time or a short time; 2) was threatened or physically intimidated by law enforcement officers; 3) relied upon promises or misrepresentations made by law enforcement; 4) was in custody or under arrest; 5) was in a public or a secluded place; and 6) either objected to the search or stood by silently while the search occurred. *Id.* (citations omitted).

The factors relating to characteristics of the individuals and the environment should not be applied mechanically, and the factors should be viewed as a guide. *Id.* Finally, "no single factor is dispositive or controlling." *United States v. Bradley,* 234 F.3d 363, 366 (8th Cir. 2000).

Applying these factors in the instant case, the Court recognizes that three or four officers in police vests with their guns visible came into the motel room after knocking on the door. Marasco was handcuffed immediately and read his *Miranda* rights prior to being asked for consent to search. However, the evidence also shows that Marasco allowed the officers into the room, appeared "friendly" and "very calm," and did not appear to be under the influence of any substance. (Tr. 45:6, 15-17.) Although Marasco did testify, he chose not to testify as to the voluntariness issue. Marasco presented no evidence indicating that his consent was involuntary. The objection is denied.

**The Effect of Harms's Refusal to Consent to a Search of the Motel Room**

15

Marasco argues that the conclusion on page 18 that evidence found in the motel room is admissible against Marasco is in error. Marasco argues that, even though he consented to the search of the room, Harms refused to consent to the same search.

Judge Thalken relied on the following language in *Georgia v. Randolph*, 126 S. Ct. 1515 (2006):

> The Fourth Amendment recognizes a valid warrantless entry and search of premises when police obtain the voluntary consent of an occupant who shares, or is reasonably believed to share, authority over the area in common with a co-occupant who later objects to the use of evidence so obtained. The question here is whether such an evidentiary seizure is likewise lawful with the permission of one occupant when the other, who later seeks to suppress the evidence, is present at the scene and expressly refuses to consent. We hold that, in the circumstances here at issue, a physically present co-occupant's stated refusal to permit entry prevails, rendering the warrantless search unreasonable and invalid *as to him.*

(Filing No. 44, at 17-18 (citing at *Randolph,* 126 S. Ct. at 1519) (emphasis added).)

Marasco argues that the case relied on by Judge Thalken does not apply. Marasco attempts to distinguish *Randolph* by arguing that it involved a married couple, whereas in his case officers knew that the room was rented to Harms and they had no reasonable basis to assume that Marasco had authority to consent. Alternatively, Marasco argues that if *Randolph* does apply, it is distinguishable because the non-consenting occupant of the room in *Randolph* was not charged with a crime, unlike the situation in the instant case where Marasco and Harms are codefendants.

*Randolph* has been cited for the proposition that when a co-occupant is present and refuses consent to search, the refusal is dispositive *as to that co-occupant* even where the other occupant consents to the search. *See, e.g., United States v. Murphy*, 2006 WL 1675930, at 7 (D. Kan. June 15, 2006). Authority to consent to a search is found in cases

16

involving "mutual use of the property by persons generally having joint access or control for most purposes." *United States v. Matlock,* 415 U.S. 164, 171 n.7 (1974). A person with actual or apparent authority may consent to a search. *Illinois v. Rodriguez,* 497 U.S. 177, 186 (1990). Marasco has not presented contrary authority. Officers checked with the motel manager, who told them that Marasco had paid for the room, and he answered the door when officers knocked. Therefore, Marasco had apparent, if not actual, authority to consent to a search of the room.

For these reasons, the objection is denied.

DEFENDANT HARMS'S OBJECTIONS

Harms objects to the following portions of the Report and Recommendation:

1.    p. 16, Part C(1) - the conclusion that the blue scale in item W-5, the coffee filters in item W-7, and item 19 (a blue 2-quart pitcher containing blue liquid) were within the plain view exception to the warrant requirement. Harms argues that officers did not provide a rationale as to why these items were immediately apparent; and

2.    p. 18, Part C(4) - the conclusions that Harms only objected to the search of her "stuff," Marasco's consent was sufficient to allow for a search of the remainder of the motel room, and items found are admissible against Marasco but not against Harms.

***Page 16, Part C(1) - Plain View; "Immediately Apparent"***

Harms objects to the conclusion that the seizure of the blue scale in item W-5, the coffee filters in item W-7, and item 19 (a blue 2-quart pitcher containing blue liquid) was

17

legal, arguing that the items could not have been seized because their illegal nature was not "immediately apparent" and Sergeant Wood did not provide a reason for their seizure.

The plain vew doctrine allows for a warrantless seizure when the seizing officer does not violate the Fourth Amendment in searching the place where the objects are found, the object's incriminating character is "immediately apparent," and the officer has a lawful right of access to the object. *United States v. Khabeer,* 410 F.3d 477, 482 (8th Cir. 2005). The Eighth Circuit Court of Appeals has stated the following with respect to the phrase "immediately apparent":

> "the use of the phrase 'immediately apparent' was very likely an unhappy choice of words, since it can be taken to imply that an unduly high degree of certainty as to the incriminatory character of evidence is necessary." For an item's incriminating character to be immediately apparent, the police merely need probable cause to believe that the item is contraband. Once that probable cause exists, a plain-view seizure of the item is permissible.

*Skokos v. Rhoades,* 440 F.3d 957, 961 (8th Cir. 2006) (citations omitted).

Coffee filters, scales, and blue colored liquid are items associated with drug trade or manufacture, and specifically methamphetamine manufacture. *United States v. Workman,* 2006 WL 1519638, at *1 (8th Cir. June 5, 2006) (scale); *United States v. Weston,* 443 F.3d 661, 664 (8th Cir. 2006) (blue discoloration on tank valves, indicating anhydrous ammonia);*United States v. Spencer,* 439 F.3d 905, 916 (8th Cir. 2006) (coffee filters); *United States v. Dukes,* 432 F.3d 910, 914 (8th Cir.) (coffee filters, bluish corrosion associated with anhydrous ammonia storage), *cert. denied,* 126 S. Ct. 2307 (2006).

The evidence shows that the scale had residue, and some of the coffee filters had been used and exhibited methamphetamine residue. (Ex. 2.) Officers were investigating

a methamphetamine lab, and they had probable cause to believe that the items in question were contraband associated with methamphetamine manufacture. The objection is denied.

***Page 18, Part C(4) - Consent(s) to Search***

Harms objects to the conclusions that Harms only objected to the search of her "stuff," and Marasco's consent was sufficient to allow for a search of the remainder of the motel room, and items found are admissible against both Marasco and Harms.

In deciding *United States v. Matlock,* 415 U.S. 164, 169 (1974), the Supreme Court stated that a joint occupant's voluntary consent is valid against the co-occupant, allowing evidence to be admitted against the co-occupant. In *Georgia v. Randolph,* 126 S. Ct. 1515 (2006), the Supreme Court concluded that a physically-present occupant's express refusal of consent is dispositive as to that occupant, regardless of the co-occupant's consent. *Id.* at 1527-28. The *Randolph* Court specifically explained that the *Randolph* holding was not meant to overrule *Matlock. See, e.g., United States v. Crosbie,* 2006 WL 1663667, at *2 (S.D. Ala. June 9, 2006); *United States v. Botchway,* 2006 WL 1581963, at *5 (June 8, 2006).

Officers relied on Marasco's consent to search the room. Recognizing Harms's refusal to consent to the search of her property, the evidence that was found among Harms's "stuff" was suppressed. This result is consistent with *Randolph.* Therefore, the objection is denied.

### GOVERNMENT'S OBJECTIONS

The government objects to the following conclusions in the Report and Recommendation: page 18 - items W-3, W-4, W-9, W-18, and W-21 are inadmissible as to Harms; page 18 - the same items should be admissible as against Harms because she

19

lacked equal control and authority to refuse consent to a search of the room; and page 19 - that Harms's statement should be suppressed as a product of an illegal search of her property, arguing: a) the search was legal; and b) even if the search was illegal, her statement was not the fruit of the search.

### Page 18 - Exigent Circumstances Despite Harms's Limited Consent

The government argues that upon entering the room and discovering numerous items in plain view, and knowing that a gas generator and acid were present in the room, officers knew that a methamphetamine lab existed and they had probable cause to arrest the occupants. The government also relies on the volatile nature of methamphetamine labs as an exigent circumstance to allow the warrantless search.

In *Kleinholz v. United States,* 339 F.3d 674 (8th Cir. 2003), officers were aware that a methamphetamine lab was in a bedroom of a house. Upon nearing the home, officers smelled ether, a substance known to be used in methamphetamine manufacture. *Id.* at 675. The ether smell, together with other facts, justified the search under the exigent circumstances exception to the warrant requirement. *Id.* at 677.

*Kleinholz* is distinguishable from the instant case. In this case, officers knew a gas generator was present. However, the evidence does not reveal the presence of any odors or that the generator was in use. The record does not show exigent circumstances. The objection is denied.

### Page 18 - Items Suppressed as to Harms; Harms's Consent

The government argues that Harms lacked control over the motel room and did not have authority to refuse consent to search the room. The Court disagrees. The record shows that, although Marasco paid for the room, Harms originally rented the room. Also,

both defendants told officers that they shared the room equally and came and went as they pleased, although Marasco carried the only room key.  The objection is denied.

### Page 19 - Harms's Statement

The government argues that Harms's statement should not be suppressed as the product of an illegal search.  For the reasons stated above, the Court has adopted Judge Thalken's conclusion that the search was illegal.  The government argues that Harms's statement was not the fruit of the illegal search.

The Court must consider the following factors when determining whether an illegal search taints a later statement: the temporal proximity of the illegal search and the statement; the presence of intervening circumstances; and the purpose and flagrancy of the official misconduct.  *Taylor v. Alabama,* 457 U.S. 687, 691-93 (1982).  Applying this test to Harms's case, her statement was given immediately after the search, which was in part legal and in part illegal as to her.  Therefore, the temporal proximity was close, and no intervening circumstances were present.  Although the record does not indicate flagrant misconduct, the lack of this factor is outweighed by the other factors.  *See United States v. McKines,* 933 F.2d 1412, 1429 (8th Cir. 1991) (engaging in the same analysis, and concluding that the first two factors outweighed the absence of the third factor).  Therefore, the objection is denied.

### CONCLUSION

For the reasons discussed, the Magistrate Judge's Report and Recommendation is adopted.

IT IS ORDERED:

1.    The Magistrate Judge's Report and Recommendation (Filing No. 44) is adopted in its entirety;

2.    The Statement of Objections to the Report and Recommendation filed by the Defendant, Richard D. Marasco (Filing No. 49) is denied;

3.    The Statement of Objections to the Report and Recommendation filed by the Defendant, Angela D. Harms (Filing No. 46) is denied;

4.    The Statement of Objections to the Report and Recommendation filed by the government (Filing No. 53) is denied;

5.    The Motion to Suppress filed by the Defendant, Richard D. Marasco (Filing No. 24) is denied;

6.    The Motion to Suppress filed by the Defendant, Angela D. Harms (Filing No. 26) is: granted as to Items W-3, W-4, W-9, W-18, and W-21 seized from Room 12 of the Offutt Motor Court on August 24, 2005, as described in Exhibit 2 of the supplemental evidentiary hearing; granted as to Harms's August 25, 2005, statement made to Detective Simones; and otherwise denied.

DATED this 24th day of July, 2006.

BY THE COURT:

s/Laurie Smith Camp
United States District Judge

22